IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK R. HARRAH ROTH IRA, on behalf itself and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No.<br>) |
| | ) JURY TRIAL DEMANDED |
| GOLDSTONE FINANCIAL GROUP, L.L.C., PELL CORP. BROTHERS, INC. ANTHONY PELLEGRINO, and MICHAEL PELLEGRINO, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiff, MARK R. HARRAH (Harrah), on behalf of the MARK R. HARRAH ROTH IRA (Plaintiff), individually, and on behalf of all other persons similarly situated, complains against GOLDSTONE FINANCIAL GROUP, L.L.C, (Goldstone) PELL CORP. BROTHERS INC. (Pell), ANTHONY PELLEGRINO, and MICHAEL PELLEGRINO (Pellegrinos) (collectively Defendants), as follows:

## NATURE OF ACTION

1. This class action is brought under the Securities Act of 1933 Act, 15 U.S.C. § 78a et seq., and the Illinois Securities Act, 815 ILCS 5/1 et seq., due to the unlawful sale of unregistered securities by Defendants. Defendants Goldstone, Pell and Pellegrinos actively, promoted, marketed and sold the unregistered securities of 1 Global Capital

1

L.L.C. (1 Global). This action is brought on behalf of the customers of Defendants who were sold securities in 1 Global.

2. 1 Global was a fraudulent scheme in which more than 3,400 retail investors invested more than $287 million. More than one third of the investors were investing retirement funds. The money was not used by 1 Global for its stated purpose. Millions of dollars were misappropriated by insiders. 1 Global has filed for bankruptcy and is being sued for fraud by the U.S. Securities and Exchange Commission (SEC).

3. Defendants Goldstone, Pell and Pellegrinos raised millions of dollars from hundreds of investors who purchased the unregistered securities of 1 Global. Defendants aggressively marketed and promoted 1 Global securities in a variety of venues to many people. Hundreds of their customers ended up purchasing the securities.

4. Goldstone hosted dinners and seminars in Chicago area restaurants such as Maggiano's, Oak Brook, and Cooper's Hawk Winery, Orland Park, which were devoted to promoting 1 Global as a safe investment suitable for retirees and IRA money. No other investments were marketed at these gatherings. Goldstone passed out color brochures with its name and address in which it trumpeted a short-term high-earnings investment. See **Exhibit 1**. These brochures did not mention 1 Global and instead highlighted the Goldstone name. However, the investment was to be in 1 Global

securities. Other materials had the Pell name, the Pellegrino name, and the email address of Goldstone along with the name of 1 Global. **Exhibit 2**.

5. Goldstone also distributed materials in which it falsely stated that 1 Capital notes sold to investors were not securities. **Exhibit 3**. In truth, the 1 Capital notes were securities and needed to be registered under federal and state securities laws. The SEC suit against 1 Global alleges that it violated the Securities Act of 1933 by selling unregistered securities.

## JURISDICTION and VENUE

6. This Court has federal question jurisdiction under 28 U.S. § 1331, Securities Act § 22(a), 15 U.S.C. §77v (a). The Court has supplemental jurisdiction over the state law claims.

7. The Defendants, directly and indirectly, made use of the mails, telephones, and internet, in their actions.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). The acts and conduct complained of occurred in substantial part in this District. Defendants' contacts with the District, including their residence here, are sufficient to subject them to personal jurisdiction.

## PARTIES

9. Plaintiff Mark R. Harrah Roth IRA is a self-directed IRA that was established by and is controlled, managed and directed by Mark R. Harrah. Mr. Harrah is a

resident of Orland Park, Illinois. He invested over $30,000 in 1 Global through his Roth IRA. The investment was sold to him by Defendants.

10. Goldstone Financial Group, L.L.C. is an Illinois limited liability company with its principal office located at 18W140 Butterfield Road, 14th Floor, Oakbrook Terrace, Illinois 60181. Its managers are Anthony and Michael Pellegrino.

11. Pell Corp. Brothers, Inc. was an Illinois corporation that was involuntarily dissolved on May 12, 2017.

12. Anthony Pellegrino was the President of Pell Corp. Brothers, Inc. As President of the corporation, he is responsible for acts carried out in the name of the corporation after it was involuntarily dissolved.

## FACTS

### The Marketing of the Notes

13. Goldstone is an investment advisor that holds itself out as a retirement planner and promises to "develop a tactful and comprehensive financial strategy just for you, putting your needs first to help you capture gains while minimizing loss". It states that "(w)e view it as our responsibility to thoroughly understand your goals and dreams so that we can leverage our experience and knowledge to help you realize them." https://goldstonefinancialgroup.com.

14. Goldstone has over $100 million in assets under management and over 700 accounts.

4

15. In 2017, Goldstone conducted a number of seminars and otherwise marketed investments in 1 Global. Mr. Harrah attended the seminars at Maggiano's and Coopers Hawk Winery. Goldstone also promoted 1 Global in a local television show that aired Sundays at 10:30 a.m. on Channel 7, ABC Chicago.

16. In connection with its extensive marketing of 1 Global, Goldstone prepared the color brochure attached hereto as **Exhibit 1**. Goldstone's name appears prominently on this brochure which includes the words "Presented by: Anthony Pellegrino". The brochure does not mention 1 Global by name. Instead, Goldstone advertises "Short Term High Earnings" with a time period of 9 – 12 months and 6 – 10% interest. At the dinner seminars, Defendants said that returns could be even higher.

17. The SEC sued 1 Global alleging that the company fraudulently raised more than $287 million from more than 3,400 investors to fund its business of offering short-term financing to small and medium-sized businesses. A copy of the S.E.C. complaint is attached hereto as **Exhibit 4**.

18. 1 Global used a network of sales agents such as Goldstone -- to whom it paid millions in commissions – to offer and sell unregistered securities in 1 Global. Plaintiff is informed and believes that Goldstone raised millions of dollars for 1 Global and induced several hundred of its customers to invest in 1 Global.

19. Both 1 Global and Goldstone promised investors a high-return, low-risk investment. 1 Global was to supposedly use investor money to extend small loans

called Merchant Cash Advances to businesses that could not obtain traditional bank financing.

20. In its brochure attached as **Exhibit 1**, Goldstone said that the Merchant Cash Advances were carefully made in reliance on credit scores, 36 months of bank statements, personal guarantees, lienable assets, and that no business received more than 1% of 1 Capital's lending. 1 Capital and Goldstone claimed that 1 Capital used a rigorous underwriting process for making the Merchant Cash Advances that approved only one in ten merchants and that an electronic collection process ensured that the advances were repaid in a timely fashion.

21. In fact, according to the SEC, 1 Global used substantial investor funds for purposes other than the Merchant Cash Advances. A large portion of investor funds went to fund the personal spending of Carl Ruderman, the Chief Executive Office of 1 Global. Substantial monies were diverted to his consumer lending businesses. Investors in 1 Global were given bogus account statements, were falsely told that the company had an independent auditor, that its loans were secured and had a low default rate. 1 Global often made large unsecured loans and had serious collection problems. See SEC Litigation Release No. 24249 dated August 29, 2018 attached as **Exhibit 5**. For instance, 1 Global made a $40 million loan to a California automotive firm and purchased about $50 million of distressed consumer debt.

22. In its Complaint, the SEC asserts that $28 million of investor money was diverted to (a) Ruderman, his family trust and entities he controlled, (b) to companies owned and operated by Ruderman's relatives and acquaintances that had nothing to do with 1 Global, and (c) to fund Ruderman's lavish lifestyle including European vacations and a Mercedes Benz.

23. The SEC further asserts that the shortfall in unaccounted investor funds worsened so that as of June 30, 2018 there was $50 million in missing investor funds.

24. Sales agents such as Goldstone were paid commissions ranging from .75% to 3% of the investor funds they raised for 1 Global. As of April 2018, 1 Global had paid out nearly $ 9 million in commissions.

25. 1 Global and Goldstone offered and sold the investment through an instrument called a Memorandum of Indebtedness (MOI) which was the note or contract between the investor and 1 Global. Plaintiff entered into a MOI with 1 Global dated January 29, 2018, a copy of which is attached as **Exhibit 6**. Plaintiff invested more than $30,000. He submitted his paperwork on October 31, 2017 so that he could take advantage of having a Roth IRA during a tax year when his income was low, but Defendants did not process the investment until 2018. See IRA forms attached as **Exhibit 7**.

26. The MOI called the investor a "Lender" and labeled 1 Global as the "Borrower". After 1 Global received investor money, it pooled and commingled the monies in non-segregated 1 Global bank accounts.

27. While the MOI was purportedly a nine month note, the note would automatically roll over for a new nine- month term unless the investor expressly informed 1 Global in writing at least 30 days before the end of the nine months that he or she did not want to roll over the note. Goldstone's own marketing materials refer to the investment as having a 9 to 12 month term which automatically removes them from the registration exemption for a 9 month note.

28. The vast majority of investors allowed their investments to automatically roll over. As of April 30, 2018, investors had sent more than $287 million to 1 Global, but 1 Global had only returned about $16 million to investors through redemptions or payments. Further, even if an investor redeemed the investment after nine months, the note period extended beyond nine months because it took 1 Global several months to fully pay back the investor's principal and interest.

29. Since investor funds were pooled into numerous Merchant Cash Advances, an investor would get a small fractionalized interest in up to hundreds of Merchants Cash Advances as opposed to an undivided interest in one Merchant Cash. If an investor wanted his or her money back at the end of nine months, it could take months

for the merchants who had gotten the investor's money to pay back the numerous Merchant Cash Advances in which the investor's money had been commingled.

30. At the beginning of 2018, 1 Global memorialized the unwinding process. Investors who had put in less than $250,000 were to be repaid in twelve months. Investors who put in more than $250,000 were to be repaid in fifteen months.

### The Notes Were Securities and A Registration Statement Was Required

31. On its letterhead, Goldstone prepared and distributed to investors, including Plaintiff, a document entitled Memorandum of Indebtedness (MOI) – Statement of Understanding. **Exhibit 8**. In the Statement of Understanding, Goldstone falsely told its customers and investors in 1 Global that MOIs are not securities. It claimed that since the notes purportedly had a maturity of nine months or less that they were not securities.

32. In fact, the MOIs did not mature in nine months or less due to the intermingling of investor funds. The MOIs are securities. A registration statement for the securities should have been filed with the SEC. No exemption from registration existed for these securities.

33. Plaintiff hereby tenders back his 1 Global securities to Defendants and demands the full return of his investment plus interest, attorney fees and costs.

### CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action under Rule 23(b)(3) of the Federal Rules of

Civil Procedure on behalf of a Class defined as follows:

> All persons who were solicited to sign Memoranda of Indebtedness with 1 Global Capital L.L.C. by Goldstone Financial Group, L.L.C., Pell Corp. Brothers, Inc., Anthony Pellegrino or Michael Pellegrino and entered into such contracts at any time within the applicable limitations period.

The Class time period is defined to be three years prior to the filing of the Complaint up to the time of trial.

35. Plaintiff reserves the right to modify the Class definition as it obtains further information through discovery.

36. Excluded from the Class are Defendants, their officers, executives, managing members, immediate families, legal heirs or representatives, successors or assigns, or any entities in which they have or had a controlling interest, its agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff or immediate family.

37. The number of total Class Members is so numerous that individual joinder of all Class Members is impracticable.

38. Plaintiff is a member of the proposed Class.

39. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

   a. Whether the Memoranda of Indebtedness marketed by Defendants are securities under the Securities Act of 1933 and the Illinois Securities Act;

10

 b.  Whether a registration statement have been filed in connection with the sale of the Memoranda; and,

 c.  Whether Defendants violated the 1933 Securities Act and the Illinois Securities Act by engaging in the sale of unregistered securities.

 40.  Plaintiff's claims are typical of the claims of Class Members.

 41.  Plaintiff's interests do not conflict with those of Class Members.  Plaintiff will fairly and adequately protect interests of Class Members.  Plaintiff is represented by counsel experienced in class action and securities litigation.

 42.  The common questions of law and fact predominate over questions affecting only individual Class Members, and a class action is superior to other methods for the fair and efficient adjudication of this controversy.

 43.  Management of the claims in a class action poses no significant impediments.

## COUNT ONE

## VIOLATION OF SECTION 5(a) and 5(c) of the SECURITIES ACT

 44.  Plaintiff repeats and realleges the allegations of paragraphs 1 to 43 above.

 44.  No registration statement was filed or in effect with the SEC pursuant to the Securities Act with respect to the securities issued by 1 Global and sold by Defendants as described above.  No exemption from registration existed with respect to those securities.

 46.  Defendants directly and indirectly:

(a) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b) carried or caused to be carried securities through the mails or in interstate commerce, by any means of transportation, for the purpose of sale or delivery after sale; or

(c) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security;

without a registration statement having been filed or being in effect with the SEC as to such securities.

47. By reason of the foregoing, Defendants violated Sections 5(a) and 5 (c) of the Securities Act, 15 U.S.C. §§ 77 e(a) and 77 e(c).

## COUNT TWO

## CONTROL PERSON LIABILITY - SECTION 15 of the SECURITIES ACT

48. Plaintiff repeats and realleges the allegations of paragraphs 1 to 47 above.

49. Section 15 of the Securities Act provides that every person who, directly or indirectly, controls any person liable for violations of the Act shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable.

50. Anthony Pellegrino and Michael Pellegrino are control persons of Goldstone and are thus jointly and severally liable for its violations of the Act.

## COUNT THREE

## VIOLATION OF THE ILLINOIS SECURITIES ACT

51. Plaintiff repeats and realleges the allegations of paragraphs 1 to 50 above.

52. Section 5 of the Illinois Securities Act, 815 I.L.C.S. 5/5, requires that all securities be registered prior to their offer or sale in Illinois.

53. The securities of 1 Global which were offered and sold by Defendants were not registered.

54. Pursuant to 815 ILCS 5/13, Plaintiff requests back the full amount paid for the securities in return for his tender, plus interest of 10% per annum, attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all Class Members the following relief against Defendants:

A. Rescission and full return of all consideration paid for 1 Global securities plus interest;

B. An award of compensatory damages to persons who no longer own the securities;

C. An award of attorney's fees and costs; and,

D. Such further and other relief as the Court deems appropriate.

## **DEMAND FOR A JURY TRIAL**

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

                                    Respectfully submitted,

                                    Plaintiff,

                                By: *Howard B. Prossnitz /s/*

LAW OFFICES OF HOWARD B. PROSSNITZ
1014 Ontario Street
Oak Park, IL 60302
(708) 203-5747
prossnitzlaw@gmail.com

Adam Szulczewski, Esq.
Birndorf and Birndorf, P.C.
225 West Washington Street
Suite 1600
Chicago, IL 60606
(312) 201-9300
szulcze@outlook.com

September 29, 2018